**In re DOSKOCIL COMPANIES INCORPORATED, Wilson Foods Corporation, et al., Debtors.**

**Bankruptcy Nos. 90–40414–11 to 90–40432–11.**

United States Bankruptcy Court, D. Kansas.

Aug. 28, 1992.

Dennis R. Dow, Mark Moedritzer and Ken E. Nelson of Shook, Hardy & Bacon, Kansas City, Mo., and Stutman, Treister & Glatt, Los Angeles, Cal., for debtor.

Richard Levy, Jr. of Milgrim Thomajan & Lee, P.C., New York City, and Gary H. Hanson of Stumbo, Hanson & Hendricks, Topeka, Kan., for Unofficial Committees of Pre–Sale Retirees.

## ORDER DENYING UNOFFICIAL COMMITTEES OF PRE–SALE RETIREES FEES AND EXPENSES PURSUANT TO § 503(B)(3)(D) & § 503(B)(4)

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Unofficial Committees of Pre–Sale Retirees apply for approval of administrative fees and expenses under § 503(b)(3)(D) and § 503(b)(4). They want the Court to approve $2,033.16 for expenses of Committee members; $345,350.98 in fees and expenses for lead counsel for the Committees; $23,607.93 in fees and expenses for local counsel for the Committees; and $25,-000.00 for anticipated fees and expenses of the Committees and their counsel. The debtors object and are joined in the objection by The Official Unsecured Creditors' Committee of Wilson Foods Corporation.

The Unofficial Committees of Pre–Sale Retirees appear by their attorneys, Richard Levy, Jr. of Milgrim Thomajan & Lee P.C., New York, New York, and Gary H. Hanson of Stumbo, Hanson & Hendricks, Topeka, Kansas. The debtors appear by their attorneys, Dennis R. Dow, Mark Moedritzer and Ken E. Nelson of Shook, Hardy & Bacon, Kansas City, Missouri, and Stutman, Treister & Glatt, Los Angeles, California.

The Court denies the application because (1) a settlement agreement executed by the Unofficial Committees waives their right to claim administrative fees and expenses incurred during these proceedings, and (2) the Unofficial Committees did not make a substantial contribution to the bankruptcy estate, as required for allowance of their request for payment of administrative expense under § 503(b)(3)(D).

## JURISDICTION

The Court finds that this proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

## BACKGROUND

For some time before 1983, Wilson Foods Corporation and its then affiliate, Wilson & Co., operated meat processing plants in Albert Lea, Minnesota, and Cedar Rapids, Iowa. The Wilson companies provided health care and life insurance benefits to retired employees of the two plants. These retirees have been referred to throughout this case as the "Pre–Sale Retirees" and the Court will continue that reference.

Sometime in 1983, Wilson Foods Corporation filed a Chapter 11 case in the Western District of Oklahoma and ultimately obtained confirmation of a reorganization plan on March 28, 1984. On March 12, 1984, apparently in contemplation of its plan of reorganization, Wilson sold its Albert Lea, Minnesota, plant to Cornbelt Meats, Inc. Then on July 2, 1984, several months after the plan was confirmed, Wilson sold the Cedar Rapids, Iowa, plant to Cedar Rapids Meats, Inc. Thereafter, the two purchasing companies operated the plants under the trade name of Farmstead Foods. The name "Farmstead" has been used throughout this case to refer to the two purchasing companies and the Court will continue to do so.

Under the terms of the sale agreements, the purchasing companies assumed the seller's obligations to the Pre–Sale Retirees for health care and life insurance benefits. The Farmstead companies made the payments to the Pre–Sale Retirees from the dates of sale until Cedar Rapids Meats, Inc. filed for Chapter 11 protection in the United State Bankruptcy Court for the Northern District of Iowa on March 9, 1990, and

Cornbelt Meats, Inc. filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Minnesota on March 14, 1990.

The present debtor, Wilson Foods Corporation, came into existence in 1988 when Doskocil Companies Incorporated purchased the prior Wilson Foods Corporation in a leveraged buyout transaction involving the merger of the old corporation into a shell corporation which was ultimately given the same name, Wilson Foods Corporation.

On March 5, 1990, the present debtor, Wilson Foods Corporation, its parent Doskocil Companies Incorporated, and 17 affiliates, initiated this case by filing their petitions under Chapter 11 in this Court.

The Unofficial Committees organized themselves in December of 1990 to represent the interests of the Pre–Sale Retirees in these cases. The Pre–Sale Retirees, through their counsel, Milgrim Thomajan & Lee P.C., filed a motion for appointment of an official committee of retired employees pursuant to § 1114(c)(2), asking the Court, in effect, to appoint one committee to represent the Pre–Sale Retirees as well as all other Wilson retirees.

In February of 1991, the Court authorized an official Section 1114 Committee (the "1114 Committee"), but in the face of Wilson's denial of liability to Pre–Sale Retirees, declined to grant the Unofficial Committees' request to include the Pre–Sale Retirees as voting members of the Official 1114 Committee, pending a ruling on whether Wilson was obligated to provide retiree benefits to the Pre–Sale Retirees. However, the representatives of the Pre–Sale Retirees were granted non-voting, *ex officio* status and, with the consent of the voting members of the Official Committee, were allowed to attend its meetings.

On July 9, 1991, Wilson filed a motion asking the Court to rule that no Pre–Sale Retirees at the Albert Lea and Cedar Rapids facilities held allowable claims or rights to retiree health benefits against Wilson Foods Corporation (the "Disallowance Motion").

On behalf of the Pre–Sale Retirees, the Unofficial Committees opposed the Wilson motion in a pleading filed on July 31, 1991. In addition, the Unofficial Committees moved to withdraw reference of the Wilson disallowance motion (the "Withdrawal Motion"), and moved for temporary allowance of the claims filed by the Pre–Sale Retirees for voting purposes (the "Voting Motion").

On July 26, 1991, Wilson filed a motion under § 1114(g) seeking the Court's approval of modifications to benefit payments for Wilson's hourly retirees. Wilson indicated that confirmation of the Third Amended Joint Plan of Reorganization was conditioned upon adjustment of the retiree health care benefits under the pension plan for hourly employees of Wilson. The Unofficial Committees for the Pre–Sale Retirees filed their opposition to this motion on August 14, 1991.

On August 21, 1991, the debtors and the Unofficial Committees of the Pre–Sale Retirees announced that a settlement had been reached resolving the Disallowance Motion, the Withdrawal Motion, and the Voting Motion, and withdrawing the Unofficial Committees' objections to the 1114(g) motion of July 26, 1991. The Court approved the settlement agreement by order of September 4, 1991. Paragraphs 2 and 10 of the settlement agreement provide:

### 2. *Settlement of Claims.*

#### a. *The Administrative Claims.*

(i) Conditioned upon the occurrence of the Effective Settlement Date, the Claims arising from and after the commencement of the Debtors' chapter 11 cases but prior to the Settlement Approval Date (the "Administrative Claims") shall be fully settled and satisfied as against Wilson Foods, Wilson and each of the Debtors, who shall be deemed released from said Administrative Claims, by the agreement of Wilson Foods, by execution of this Agreement, to pay the sum of One Million Five Hundred Thousand Dollars ($1,500,000) (the "Settlement Amount") to a fund to be established and administered by the

Committees or its designated representative(s)....

> **b.** *Claims for Future Benefits....*
>
> **c.** *General Unsecured Claims.* All other claims of the Pre–Sale Retirees against Wilson Foods, Wilson or any of the other Debtors, as a result of Wilson Foods' adjustment of the retiree benefits of the Pre–Sale Retirees, or otherwise (the "*other claims*") shall be fully settled and satisfied as against Wilson Foods, Wilson and each of the Debtors, who shall be deemed released from said claims, by the Pre–Sale Retirees, sharing, pro rata, with all other Class 20 (or 20a and 20b) creditors (the "Class 20 creditors") of the Debtors (as said Class 20 creditors are defined in the Plan) in the Two Million Five Hundred Thousand Dollars ($2,500,000) payment to be made to said Class 20 creditors within 5 years of the Effective Date (as defined in the Plan) pursuant to the Plan....
>
> ....
>
> 10. *Indemnification.* The Pre–Sale Retirees agree to indemnify and hold harmless the Debtors, each of them and their professionals, the Committees, their members and their professionals from any and all claims, damages, cost or expenses, including without limitation reasonable and necessary attorneys' fees, litigation expenses and court costs ("Expenses") arising out of any demands, claims or causes of action asserted by or on behalf of any Pre–Sale Retirees (including, without limitations, claims previously asserted by any party to this Agreement) for past or future retiree health care benefits. Such Expenses shall be paid upon demand from any Settlement Payment or Future Benefits payment held for distribution to Pre–Sale Retirees, upon reasonable prior notice to the Committees through their counsel....

There are no other paragraphs of the settlement agreement that might be construed as related to the treatment of the claims of the Pre–Sale Retirees.

## DISCUSSION

Sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code state:

**§ 503. Allowance of administrative expenses**

> ... (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> ... (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> ... (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ....
>
> ... (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant....

The position of the Unofficial Committees is that without their counsels' efforts and skill in resolving the dispute between the Pre–Sale Retirees and the debtors, the debtors may not have been able to achieve confirmation of the plan on the schedule that was ultimately realized; therefore, the Unofficial Committees did make a substantial contribution in the case and are entitled to recover their actual and necessary expenses under 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4).

The debtors respond (1) that the terms of the settlement agreement are clear and that the agreement was intended to settle all claims of the Pre–Sale Retirees against the debtors; (2) that the Unofficial Committees did not make a substantial contribution in these cases, but even if they did,

their application for fees and expenses fails to segregate the services that benefitted the estate from those which primarily benefitted the Committees and that the application requests reimbursement for items which are not compensable under the Bankruptcy Rules and the Fee and Expense Guidelines entered in these cases; (3) that § 503(b)(3) and (b)(4) were not intended to allow creditors to be paid their actual and necessary expenses involved in litigating their own claims; (4) that the fact that the issues were ultimately settled and confirmation proceeded as scheduled is not the type of "substantial contribution to the case" which courts have found entitle a creditors' committee to reimbursement of expenses under § 503(b)(3) or (b)(4) where it was the creditors' committee's that raised the issues threatening to delay the confirmation hearing and where it was the creditors' committee's constituency alone that directly benefitted by the terms of the settlement agreement.

## CONCLUSIONS OF LAW

■ Paragraph 2 of the settlement agreement divides "Settlement of Claims" into three sections: administrative, future benefits, and general unsecured claims.

In paragraph 2a, administrative claims arising from and after the commencement of the Chapter 11 are "fully settled and satisfied as against Wilson Foods, Wilson and each of the debtors, who shall be deemed released from said Administrative Claims." The "administrative claims" are settled for $1,500,000.00. The total of the present administrative claim for attorneys' fees and expenses is approximately $400,-000.00. It seems unlikely that the parties would discuss and settle administrative claims for $1,500,000.00, yet leave open the question of when and how a $400,000.00 attorneys' fee claim would be paid without including an express exclusion of such fees from the release of the agreement. Either everyone understood that the agreement intended to release Wilson from all further liability to the Unofficial Committees of Pre–Sale Retirees or the attorneys for the Committees have committed a grievous oversight, which the Court doubts.

The language in the subparagraph on general unsecured claims reads, "All other claims of the Pre–Sale Retirees against Wilson Foods ... as a result of Wilson Foods' adjustment of the retiree benefits of the Pre–Sale Retires ... shall be fully settled and satisfied...." This language acts as yet another "Terminator" for Wilson's assault on the Committees' position in this debate.

The terms of the settlement agreement are straightforward in releasing Wilson from any further liability. There being no express provision in the agreement excluding administrative expenses from the release, the Court can only find that movants have waived any claim for administrative expenses by entering into the settlement agreement.

Aside from the fact that it allowed the case to proceed to confirmation on schedule, the settlement agreement has not been shown to have benefitted the estate. Actually, retirees and creditors other than the Pre–Sale Retirees probably lost claim value when Wilson settled with the Pre–Sale Retirees for $1,500,000.00. This is money that went to the Pre–Sale retiree group rather than to other Wilson retirees and general creditors.

■ The Court agrees with the debtor that § 503(b)(3) and (b)(4) were not intended to allow creditors to be paid their actual and necessary expenses involved in litigating their own claims. The fact that the issues were ultimately settled and confirmation proceeded as scheduled is not the type of "substantial contribution to the case" which courts have found entitle a creditors' committee to reimbursement of expenses under § 503(b)(3) or (b)(4).

The Committees' request is denied.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.